DAVIS, Judge.
 

 *244
 
 Respondent R.D. ("Robert")
 
 [1]
 
 appeals from the trial court's 11 February 2015 orders in file number 14 JA 24 adjudicating his daughter F.C.D. ("Faye") to be a neglected juvenile and ordering that she remain in the legal custody of the Sampson County Department of Social Services ("DSS"). Respondent M.B. ("Melanie") appeals from separate orders entered on 11 February 2015 in file number 14 JA 25 adjudicating her son M.B. ("Michael") to be an abused and neglected juvenile and ordering that he remain in the legal custody of DSS and in his current placement with his maternal grandmother. After careful review, we affirm.
 

 Factual Background
 

 In early 2014, Melanie and Michael resided with Robert and Faye at Robert's home in Godwin, North Carolina. While both Melanie and Robert maintained that they were merely friends, Melanie's friends and coworkers described the relationship between Melanie and Robert as a dating relationship.
 

 *245
 
 On 10 March 2014, DSS filed two juvenile petitions alleging that (1) Faye was a neglected juvenile; and (2) Michael was an abused and neglected juvenile. Both petitions stated that DSS had received a report of potential abuse and neglect involving Faye and Michael on 27 February 2014. According to the report, Robert had told Michael that Michael was "possessed with demons" and had forced Michael to (1) sleep outside on a cold night; (2) sit on a chair blindfolded and pray that God would rid him of the demons; and (3) " baptize" himself by submerging his body in a bathtub filled with water and repeating "Lord just wash me and cleanse me" seven times. DSS alleged that the "methods of discipline" that had been inflicted on Michael in Faye's presence were "cruel and grossly inappropriate, which created an injurious environment for [Faye]." DSS obtained nonsecure custody of both juveniles on 7 March 2014. Faye was placed in foster care, and Michael was placed with his maternal grandmother, "Beth."
 

 On 18 September 2014, DSS filed supplemental juvenile petitions concerning both Faye and Michael. The petitions stated that DSS had received a report that Michael had
 
 *217
 
 also previously been "kicked, tied to a tree, hit with a sock with soap in it and ... forced to sleep outside" and that Faye had been "exposed to this behavior." Additionally, the petitions noted that a Child and Family Evaluation conducted with Robert, Melanie, and both children yielded "findings of neglect in the form of injurious environment regarding [Faye]" and "findings of emotional abuse and neglect regarding [Michael]."
 

 The trial court held adjudication and disposition hearings for both Faye and Michael on 29 October 2014. During the hearings, the trial court also addressed Melanie's and Robert's petitions seeking judicial review of DSS's determinations that each was a "responsible individual" as defined by N.C. Gen.Stat. § 7B-101(18a). On 11 February 2015, the trial court entered orders (1) adjudicating Faye a neglected juvenile and Michael an abused and neglected juvenile; (2) concluding that Melanie and Robert were responsible individuals based on its determination that both had abused and seriously neglected Michael; and (3) directing DSS to place Melanie and Robert on the Responsible Individuals List pursuant to N.C. Gen.Stat. § 7B-311.
 

 Melanie and Robert appeal from the trial court's orders concerning their respective children. Because the matters involve common issues of fact and law, we consolidated the cases pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure.
 

 *246
 

 Analysis
 

 I. Melanie's Appeal
 

 A. Adjudication of Abuse as to Michael
 

 In her first argument on appeal, Melanie contends that the trial court erred in adjudicating Michael an abused juvenile. We disagree.
 

 When reviewing a trial court's order adjudicating a juvenile abused, neglected, or dependent, this Court's duty is "to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact."
 
 In re T.H.T.,
 

 185 N.C.App. 337
 
 , 343,
 
 648 S.E.2d 519
 
 , 523 (2007) (citation, quotation marks, and brackets omitted),
 
 aff'd as modified,
 

 362 N.C. 446
 
 ,
 
 665 S.E.2d 54
 
 (2008). If supported by competent evidence, the trial court's findings are binding on appeal even if the evidence would also support contrary findings.
 
 In re A.R.,
 

 227 N.C.App. 518
 
 , 519-20,
 
 742 S.E.2d 629
 
 , 631 (2013). Its conclusions of law, however, are reviewed
 
 de novo.
 

 In re H.H.,
 
 ---N.C.App. ----, ----,
 
 767 S.E.2d 347
 
 , 349 (2014).
 

 The Juvenile Code defines an abused juvenile as one whose parent, guardian, custodian, or caretaker "[c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means; ... [u]ses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior; ... [or c]reates or allows to be created serious emotional damage to the juvenile." N.C. Gen.Stat. § 7B-101(1) (2013).
 

 Here, the trial court made the following pertinent findings of fact in support of its conclusion that Michael was an abused juvenile:
 

 13. That since 2012, [Melanie's] personality has changed and she has referred to [Robert] as a "prophet" and a "healer" and stated [Robert] could cast demons out of people and that the Federal Bureau of Investigation and the Central Intelligence Agency were looking for them.
 

 14. That [Melanie] has informed co-workers of her belief that [Michael] is possessed with demons and that when she looked at him on occasion his face would "change" and that it would no longer look like her son.
 

 15. That [Melanie] noticed [Michael] doing a "dance" and she researched the dance on the Internet herself and determined that it was a demonic dance.
 

 *247
 
 16. That [Melanie] has made statements that she would give [Michael] up to God.
 

 17. That [Melanie] has shown additional signs of confusion and paranoia and told her mother that her mother's property had been taken from someone else and also reported to her mother than [Melanie's]
 

 *218
 
 feet were "sticking to the floor," resulting in [Melanie] fleeing the home.
 

 18. That while residing at the home of [Robert] with [Melanie] ... [Michael] was forced to sleep at least two nights outside and this occurred in the month of February, 2014, during a very cold period of time.
 

 ....
 

 20. That [Robert] ordered [Michael] to go walk in the woods and pray and gave the instructions while holding a firearm, causing [Michael] distress.
 

 21. That [Robert] and [Melanie] have, on numerous occasions, accused [Michael] of having demons inside of him and also told him demons were swirling around over his head.
 

 22. That based upon the accusations and repeated statements of [Robert] and [Melanie,] [Michael] began to believe he had a demon inside of him.
 

 23. That [Michael] likes to dance and on at least one occasion he was dancing and [Robert] and [Melanie] accused him of doing a demonic dance.
 

 24. That [Michael] has been blindfolded and instructed to baptize himself by going under water in a bathtub seven times and while under saying "save me" seven times.
 

 25. That [Michael] was also forced to sit on a stool and put his foot on a rock.
 

 26. That [Melanie] has struck [Michael] with a belt repeatedly and [Michael] attempted to dodge the belt but [Melanie] would keep attempting to strike him resulting in [Michael] being hit all over his body, including his head.
 

 27. That [Melanie] and [Robert] have tied [Michael] to a tree using duct tape.
 

 *248
 
 Because Melanie has not challenged findings 13, 18, 20, 24, 25 or 26, they are binding on appeal.
 
 See
 

 Koufman v. Koufman,
 

 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Melanie does, however, challenge the trial court's findings of fact 14, 15, 16, 17, 21, 22, 23, and 27 as not supported by evidence, and we proceed to address each in turn.
 

 With regard to finding of fact 14, Melanie "excepts to this finding to the extent that it implies that there were multiple conversations over a period of time during which the mother was convincing Michael and others that Michael was possessed." We do not read finding 14 as suggesting that Melanie continually and repeatedly engaged in conversations with her colleagues about her belief that her son was "possessed." Rather, we read the finding as signifying precisely what it states-that Melanie informed several co-workers that her son was possessed by demons. This finding is supported by competent evidence as two of Melanie's co-workers testified that Melanie had told each of them that Michael "has demons," his facial features would change at times, and that he suffered from "demonic possession."
 

 In findings 15 and 23, the trial court described an incident where Melanie concluded that her son's dancing was a "demonic dance." In her brief, she asserts that the testimony at trial showed that Michael's dance "did not seem to be an issue" with her. However, the evidence of record shows that Melanie-while visibly upset-told one of her coworkers that her son had performed "a dance move, and it was Googled on the Internet and it was some type of demonic move." Michael likewise testified that he had been accused of performing a demonic dance when he had showed Melanie and Robert a "pop robotic" dance move to dubstep music. Thus, the trial court's findings that Melanie had determined that Michael's dance move was a demonic dance based on her Internet search and that Robert and Melanie had accused Michael of performing a demonic dance are supported by the evidence.
 

 Melanie next argues that findings 16 and 17-which refer to instances described by her mother Beth where Melanie displayed unusual behavior-are not indicative of Melanie suffering from paranoia or confusion and instead merely indicate the contentious relationship between the two women. However, Beth's testimony regarding her daughter's behavior supports the trial court's findings
 
 *219
 
 concerning these incidents, and it was the trial court's duty to determine what inferences should be drawn from that testimony.
 
 See
 

 In re Whisnant,
 

 71 N.C.App. 439
 
 , 441,
 
 322 S.E.2d 434
 
 , 435 (1984) (explaining that trial judge has responsibility to "weigh
 
 *249
 
 and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom"). Moreover, two other witnesses, one being a licensed psychologist, described Melanie as paranoid.
 

 Findings 21, 22, and 27 describe both Robert and Melanie accusing Michael of being possessed by demons and tying him to a tree. Melanie argues that these findings are inaccurate because "[Robert] did all of these things, not [her]." An examination of the record, however, reveals that Melanie told her son and other people that he was possessed by demons and that Michael had started to believe he was, in fact, "possessed" based on Robert's and Melanie's statements and actions towards him, which included their act of tying him to a tree with duct tape. Thus, these findings are also supported by the evidence and are binding on appeal.
 
 See
 

 A.R.,
 

 227 N.C.App. at 519-20
 
 ,
 
 742 S.E.2d at 631
 
 .
 

 As we have determined that each of the challenged findings was supported by competent evidence, we now turn to whether these findings supported the trial court's conclusion that Michael was an abused juvenile. As discussed above, a child is an abused juvenile if his parent, guardian, custodian, or caretaker "[u]ses or allows to be used upon [him] cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior." N.C. Gen.Stat. § 7B-101(1)(c).
 

 Recently, in
 
 H.H.,
 
 our Court observed that a "review of the case law reveal[ed] only three cases, all unpublished and thus lacking precedential value, in which this Court has considered what actions constitute 'cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior.' "
 
 H.H.,
 
 --- N.C.App. at ----,
 
 767 S.E.2d at 350
 
 . We noted that two of these three cases involved extreme examples of discipline. In the first case, a child was choked, threatened with eating dog feces, and had a firearm pointed at him.
 

 Id.
 

 at ----,
 
 767 S.E.2d at 350
 
 . In the second case, the juvenile was forced to stand in a "T-Shape" for up to five minutes with duct tape over his mouth while being struck with "a belt, paddle, switch, or other object."
 

 Id.
 

 at ----,
 
 767 S.E.2d at 350
 
 . The third case involved allegations of abuse stemming from an incident where the child had been hit in the face and then kicked in the stomach by her mother.
 

 Id.
 

 at ----,
 
 767 S.E.2d at 350
 
 . We concluded that the circumstances existing in
 
 H.H.
 
 -where the trial court found that the child had been struck "five times with a belt, leaving multiple bruises on the inside and outside of his legs which were still visible the following afternoon"-were sufficient to warrant a finding of abuse.
 

 Id.
 

 at ----,
 
 767 S.E.2d at 350
 
 .
 

 *250
 
 Here, the trial court's findings establish that Michael was (1) forced to sleep outside on at least two cold nights during the month of February; (2) bound to a tree; (3) required to participate in a "self-baptism" in a bathtub full of water; (4) ordered by Robert to pray while Robert was brandishing a firearm; (5) struck with a belt "all over his body"; and (6) repeatedly told by Robert and Melanie that he was possessed by demons to the point that he himself began to believe it to be true. We hold that the trial court's findings concerning these incidents-all of which are supported by evidence of record-demonstrate that Michael was an abused juvenile in that he was subjected to cruel or grossly inappropriate procedures or devices to modify behavior.
 

 Melanie argues that the factual findings made by the trial court were taken out of context in that the court described the incidents "as if Michael had not [previously] exhibited behavioral and mental health issues which prompted some of the actions." We reject this contention. First, Melanie cites no legal authority in support of her argument on this point.
 
 See
 
 N.C.R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Second, we are unpersuaded by the implication
 
 *220
 
 of her argument, which is that Michael's preexisting behavioral problems rendered the "discipline" inflicted upon him appropriate. The definition of abuse in this subsection of the statute focuses on the severity and brutality of the procedures and devices employed by the parent or caretaker against the juvenile rather than the juvenile's behavior that those procedures and devices were designed to correct.
 
 See
 
 N.C. Gen.Stat. § 7B-101(1)(c).
 

 Thus, the trial court did not err in concluding that Michael was subjected to cruel or grossly inappropriate procedures or devices such that he was an abused juvenile as defined by N.C. Gen.Stat. § 7B-101(1). Because this ground standing alone is sufficient to support the adjudication of abuse, we need not address the trial court's two other grounds for adjudicating Michael an abused juvenile.
 

 B. Placement on the Responsible Individuals List
 

 A "responsible individual" is statutorily defined as "[a] parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile." N.C. Gen.Stat. § 7B-101(18a). The Department of Health and Human Services maintains a registry of responsible individuals and "may provide information from this list to child caring institutions, child placing agencies, group home facilities, and other providers of foster care, child care, or adoption services that need to determine the
 
 *251
 
 fitness of individuals to care for and adopt children." N.C. Gen.Stat. § 7B-311(b) (2013). An individual may be placed on this list-known as the Responsible Individuals List ("RIL")-if (1) the individual is given notice pursuant to N.C. Gen.Stat. § 7B-320 that he or she has been identified as a responsible individual by a director of a county department of social services in conjunction with an investigative assessment of abuse or serious neglect; and (2) "[t]he court determines that the individual is a responsible individual as a result of a hearing on the individual's petition for judicial review."
 

 Id.
 

 At such a hearing, "the director shall have the burden of proving by a preponderance of the evidence the abuse or serious neglect and the identification of the individual seeking judicial review as a responsible individual." N.C. Gen.Stat. § 7B-323(b) (2013).
 

 Melanie contends that the trial court's placement of her name on the RIL constituted error because (1) the hearing in the trial court failed to safeguard her right to due process of law; and (2) the evidence did not support a conclusion that she abused or seriously neglected Michael. Melanie asserts that because the RIL hearing was "conflated with the adjudication," she was deprived of her right to present sworn evidence, represent herself or obtain the services of an attorney at her own expense, and cross-examine witnesses and make a closing argument as provided for in N.C. Gen.Stat. § 7B-323(c). We disagree.
 

 The issue of whether Michael was an abused and neglected juvenile and the issue of whether Melanie was a responsible individual were heard together. Melanie's attorney represented her on both matters by presenting evidence, cross-examining witnesses, and making arguments to the court. Indeed, the transcript reveals that during closing arguments Melanie's counsel expressly argued that Melanie's placement on the RIL would be improper. Moreover, Melanie never asserted during the proceedings that she wished to represent herself on the RIL issue. Thus, we conclude that Melanie was not deprived of the rights guaranteed by N.C. Gen.Stat. § 7B-323(c).
 

 We are also satisfied that the trial court's conclusion that Melanie should be placed on the RIL is supported by its findings, which, in turn, are supported by competent evidence. As discussed in detail above, the evidence at trial demonstrated that Melanie "used or allowed to be used upon [Michael] cruel or grossly inappropriate devices or procedures to modify behavior" such that Michael was an abused juvenile. Thus, Melanie is a parent "who abuse[d] ... a juvenile," and the trial court therefore did not err in ordering that her name be placed on the RIL. N.C. Gen.Stat. § 7B-101(18a) (defining responsible individual as
 
 *252
 
 "[a] parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile").
 
 *221
 

 II. Robert's Appeal
 

 On 20 March 2015, Robert gave notice of appeal from the trial court's 11 February 2015 orders adjudicating Faye to be a neglected juvenile and ordering that she remain in the legal custody of DSS. However, this notice of appeal was untimely. On 15 June 2015, Robert filed a petition for writ of certiorari with this Court seeking our review of the merits of his appeal despite the fact that the notice of appeal was filed beyond the applicable deadline. On 29 June 2015, Faye's guardian
 
 ad litem
 
 filed a motion to dismiss Robert's appeal based on his untimely notice of appeal.
 

 It is well established that this Court may, in its discretion, issue a writ of certiorari "when the right to prosecute an appeal has been lost by failure to take timely action." N.C.R.App. P. 21(a)(1). We agree that Robert's appeal must be dismissed as untimely, but, in our discretion, we grant his petition for writ of certiorari for the purpose of considering the merits of his arguments.
 

 Robert's sole contention on appeal is that the trial court erred by adjudicating Faye a neglected juvenile. We disagree.
 

 A neglected juvenile is defined in N.C. Gen.Stat. § 7B-101(15) as
 

 [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
 
 In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
 

 N.C. Gen.Stat. § 7B-101(15) (emphasis added).
 

 Our Court has previously explained that this definition of neglect affords "the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside."
 
 In re McLean,
 

 135 N.C.App. 387
 
 , 395,
 
 521 S.E.2d 121
 
 , 126 (1999). A child may be adjudicated a neglected juvenile if
 
 *253
 
 the injurious environment or the parent's failure to provide proper care causes the juvenile some physical, mental, or emotional impairment or creates "a substantial risk of such impairment."
 
 In re Safriet,
 

 112 N.C.App. 747
 
 , 752,
 
 436 S.E.2d 898
 
 , 901-02 (1993).
 

 Here, the trial court made the following pertinent findings of fact in support of its determination that Faye was neglected:
 

 17. That while residing at the home of [Robert] and [Faye], [Michael] was forced to sleep at least two nights outside and this occurred in the month of February, 2014, during a very cold period of time.
 

 ....
 

 19. That [Robert] ordered [Michael] to go walk in the woods and pray and gave the instructions while holding a firearm, causing [Michael] distress.
 

 20. That [Robert] and [Melanie] have, on numerous occasions, accused [Michael] of having demons inside of him and also told him demons were swirling around over his head.
 

 21. That based upon the accusations and repeated statements of [Robert] and [Melanie,] [Michael] began to believe he had a demon inside of him.
 

 22. That [Michael] has been blindfolded and instructed to baptize himself by going under water in a bathtub seven times and while under saying "save me" seven times.
 

 23. That [Robert] and [Melanie] have tied [Michael] to a tree using duct tape.
 

 24. That [Faye] has been exposed to the abuse and neglect of [Michael] despite the fact [Faye] herself has not been physically harmed by [Robert] or [Melanie].
 

 Based on these findings, the trial court concluded as a matter of law that Faye lived in an environment injurious to her welfare and was therefore a neglected juvenile.
 

 Robert argues that the trial court's conclusion of neglect is unsupported because the abuse of
 
 Michael
 
 does not demonstrate that
 
 Faye
 
 was at risk of physical, mental, or
 
 *222
 
 emotional impairment. This argument is meritless.
 
 *254
 
 First, the record contains ample evidence that Faye witnessed and was exposed to Michael's abuse and neglect. Michael testified that Faye was either physically present for or at least aware of: (1) Robert conducting an "exorcism" to rid Michael of his demons; (2) Michael being blindfolded and "baptized" in the bathtub; and (3) Robert making Michael "do facial expressions," which led to Robert concluding that Michael was possessed by demons and forcing him to sleep outside in the cold while wearing only pajama pants, flip-flops, and a sleeveless t-shirt.
 

 Admittedly, the trial court failed to make an express finding that Faye was at risk of impairment based on her exposure to Michael's abuse. However, in cases "[w]here there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding."
 
 In re Padgett,
 

 156 N.C.App. 644
 
 , 648,
 
 577 S.E.2d 337
 
 , 340 (2003). Moreover, this Court has held that the exposure of a child to the "infliction of injury by a parent to another child or parent, can be conduct causing or potentially causing injury" to that child.
 
 In re W.V.,
 

 204 N.C.App. 290
 
 , 294,
 
 693 S.E.2d 383
 
 , 386 (2010).
 

 In the present case, Kristy Matala, a licensed psychologist who had conducted the child family evaluations for both Faye and Michael, testified that Faye's exposure to Michael's neglect and abuse "would be distressing for her" and "could cause her fear and worry about something like that happening to her." She further expressed her opinion that exposing a child to the "paranoid ideation" displayed by Robert and Melanie would cause that child "to feel unnecessary fear" and categorized such behavior as "emotional abuse."
 

 Because of the clear evidence demonstrating that Faye lived in an injurious environment and faced a substantial risk of physical, mental, or emotional impairment, the trial court's adjudication of Faye as a neglected juvenile did not constitute error. Accordingly, we affirm the trial court's adjudication and disposition orders concerning Faye.
 

 Conclusions
 

 For the reasons stated above, we affirm the trial court's orders in file numbers 14 JA 24 and 14 JA 25.
 

 AFFIRMED.
 

 Judges CALABRIA and STROUD concur.
 

 [1]
 

 Pseudonyms are used throughout the opinion to protect the identity of the minor children involved in this matter and for ease of reading. N.C.R.App. P. 3.1(b).