ENOCHS, Judge.
 

 *376
 
 Randolph County Department of Social Services ("RCDSS") began a child protective services investigation regarding the minor child AJP
 
 [1]
 
 on 26 January 2015 due to a report alleging that Petitioner Appellant Unwana Eyo Patron ("Appellant") had physically abused her step-son AJP by striking him in the back of the head with a coffee mug. After substantiating the allegations of abuse, RCDSS made the administrative decision to place Appellant's name on the Responsible Individuals List (RIL). Appellant was granted judicial review of this decision, and the trial court held a hearing and ultimately ordered Appellant's name to be added to the RIL. Because the trial court made findings of fact supported by competent evidence, and from these made proper conclusions of law, we affirm this order.
 

 Factual Background
 

 On 26 January 2015, AJP woke and prepared to go to school. He needed a document signed by a parent and so he approached Appellant in their kitchen for her signature. Appellant told AJP to get out of the house because he was wearing his shoes inside. AJP returned to his bedroom, removed his shoes, and then went back to the kitchen to ask again for Appellant's signature. When he returned to the kitchen, he picked up a coffee mug filled with pens with which Appellant could sign AJP's document. Appellant snatched the mug from AJP and told him "I thought I said get out." Because AJP was upset about the way Appellant was treating him, he called her "selfish" and turned to exit the kitchen. Appellant then struck AJP in the back of the head with the coffee mug.
 

 After being stuck, AJP touched his head and saw that he was bleeding. Appellant tried to apologize, but AJP "told her not to touch [him][.]" Appellant responded, "Well, then don't get blood on my floor[.]" AJP went to the bathroom to clean himself up but felt dizzy and lightheaded. He told his father what had happened and that he did not feel well, and his father took him to High Point Regional Hospital. At the hospital, AJP received four staples to close the wound. While at the hospital, AJP spoke with a social worker and a police officer and told them what had occurred.
 

 At the time RCDSS began their investigation, AJP was 17 years old and resided in the home with his biological father, who was married
 
 *377
 
 to Appellant, Appellant, and their three other children. Following an investigation of the incident with AJP, RCDSS substantiated the allegations of abuse and notified Appellant on 11 March 2015 that her name was to be placed on the RIL pursuant to N.C. Gen. Stat. § 7B-311(b) (2015). Appellant requested judicial review of RCDSS's decision to add her name to the RIL on 23
 
 *856
 
 March 2015 by filing a Petition for Judicial Review: Responsible Individuals List. A hearing was held before the Honorable Scott C. Etheridge on 19 October 2015 in Randolph County District Court. Following the hearing, the trial court entered an order on 9 November 2015 placing Appellant's name on the RIL. It is from this order that Appellant timely appeals.
 

 Analysis
 

 A.
 
 Subject Matter Jurisdiction
 

 Jurisdiction is "[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it."
 
 Black's Law Dictionary
 
 929 (9th ed. 2009) (defining "judicial jurisdiction"). Subject matter jurisdiction, specifically, is " '[j]urisdiction over the nature of the case and the type of relief sought[.]' "
 
 In re T.R.P.
 
 ,
 
 360 N.C. 588
 
 , 590,
 
 636 S.E.2d 787
 
 , 790 (2006) (quoting
 
 Black's Law Dictionary
 
 857 (7th ed. 1999)). "[W]hen there is a want of jurisdiction by the court over the subject matter ...," the judgment is void.
 
 Hart v. Thomasville Motors, Inc.
 
 ,
 
 244 N.C. 84
 
 , 90,
 
 92 S.E.2d 673
 
 , 678 (1956). "In reviewing a question of subject matter jurisdiction, our standard of review is
 
 de novo
 
 ."
 
 In re J.A.P. & I.M.P.
 
 ,
 
 189 N.C.App. 683
 
 , 685,
 
 659 S.E.2d 14
 
 , 16 (2008).
 

 In the case
 
 sub judice
 
 , jurisdiction was granted to the district court by statute. Our General Assembly, "within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State" by statute.
 
 Bullington v. Angel
 
 ,
 
 220 N.C. 18
 
 , 20,
 
 16 S.E.2d 411
 
 , 412 (1941). The RIL and petitions for judicial review of decisions regarding who is added to the list exist pursuant to statute and are governed by Chapter 7B of the North Carolina General Statutes (the Juvenile Code). Jurisdiction over the RIL is also created by this governing statute.
 
 See
 
 N.C. Gen. Stat. §§ 7B-200, 7B-201, and 7B-311 (2015).
 

 Article 2 of the Juvenile Code states in relevant part that "the [district] court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent.... The court also has exclusive original jurisdiction of ... [p]etitions for judicial review of a director's determination under Article 3A of this Chapter," which specifically governs the RIL. N.C. Gen. Stat. § 7B-200(a)(9).
 

 *378
 
 Article 3A further defines the district court's jurisdiction in petitions for judicial review of these determinations. "[U]pon the filing of a petition for judicial review by an individual identified by a director as a responsible individual, the district court of the county in which the abuse or neglect report arose may review a director's determination of abuse or serious neglect
 
 at any time
 
 if the review serves the interests of justice or for extraordinary circumstances." N.C. Gen. Stat. § 7B-323(e) (2015) (emphasis added).
 

 Appellant has argued that once AJP turned 18 years of age, the trial court's jurisdiction ended pursuant to N.C. Gen. Stat. § 7B-201(a), which states that jurisdiction shall continue either "until terminated by order of the court or until the juvenile reaches the age of 18 years...." AJP was 18 years of age at the time of the hearing, and so Appellant argues that jurisdiction had terminated. However, whether AJP was 18 at the time of the hearing on the petition for judicial review is not relevant to our inquiry into the trial court's jurisdiction.
 

 If the victim of abuse or serious neglect is a juvenile at the time of the incident that initiated a department of social services' "investigative assessment response that results in a determination of abuse or serious neglect and the identification of a responsible individual," then "the director shall personally deliver written notice of the determination to the identified individual." N.C. Gen. Stat. § 7B-320(a) (2015). For judicial review of this determination, the relevant inquiry is whether AJP was under the age of 18 at the time Appellant struck him.
 

 During the hearing addressing Appellant's petition, Ashley Coddle, a registered nurse in the High Point Regional Hospital Emergency Room, testified that she had cared for AJP on 26 January 2015. It appears from the transcript of her testimony that AJP's medical records were allowed into evidence by stipulation. These medical records, introduced as RCDSS's Exhibit 2, contain numerous
 
 *857
 
 instances where AJP's birthday is shown.
 
 [2]
 
 Appellant has not argued that this birthdate was incorrect. Knowing AJP's birthdate, and the date of the incident, it is clear from this record that AJP was 17 years old, a minor, at the relevant time.
 

 Because AJP was 17 years old at the time Appellant struck him, her name was properly added to the RIL. The addition of her name to this list could be reviewed by the district court "at any time." Thereby, the trial
 
 *379
 
 court had jurisdiction to hear Appellant's petition for judicial review and this assignment of error is overruled.
 

 B.
 
 Motion to Stay
 

 Appellant has argued that the trial court erred by failing to grant her motion to stay the proceedings. Appellant had been charged with feloniously assaulting AJP for the same assault that caused her name to be placed on the RIL. She makes a statutory argument that because she had been named "a defendant in a criminal court case resulting from the same incident," the trial court should have allowed those criminal proceedings to run their course before reviewing the petition for judicial review. N.C. Gen. Stat. § 7B-324(b) (2015). Furthermore, she argues that the trial court erred by failing to include in its order any findings with regard to her motion to stay the proceedings as required. We disagree.
 

 "If an individual seeking judicial review is named as a ... defendant in a criminal court case resulting from the same incident, the district court judge
 
 may
 
 stay the judicial review proceeding."
 

 Id.
 

 (emphasis added). The word "may" connotes a discretionary decision, not a mandatory one, and so we review the trial court's decision here, like any grant or denial of a motion to stay, for an abuse of discretion.
 
 Muter v. Muter
 
 ,
 
 203 N.C.App. 129
 
 , 132,
 
 689 S.E.2d 924
 
 , 927 (2010).
 

 This Court has held that
 

 [w]e do not re-weigh the evidence before the trial court or endeavor to make our own determination of whether a stay should have been granted. Instead, mindful not to substitute [our] judgment in place of the [trial court's], we consider only whether the trial court's denial was a patently arbitrary decision, manifestly unsupported by reason.
 

 Id
 
 . at 134,
 
 689 S.E.2d at 928
 
 (internal citations and quotation marks omitted).
 

 In this case, there was no statutory mandate that the trial court grant a stay. Furthermore, Article 8 of the Juvenile Code, the article that governs juvenile petition hearing procedures, states in pertinent part that "[r]esolution of a pending criminal charge against a respondent arising out of the same transaction or occurrence as the juvenile petition shall not be the sole extraordinary circumstance for granting a continuance." N.C. Gen. Stat. § 7B-803 (2015). The trial court here heard arguments from counsel for both Appellant and RCDSS and denied the request for the stay. Our review of this denial of Appellant's motion to stay is not
 
 *380
 
 to "consider ... whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record."
 
 State v. Lasiter
 
 ,
 
 361 N.C. 299
 
 , 302,
 
 643 S.E.2d 909
 
 , 911 (2007) (citing
 
 Wainwright v. Witt
 
 ,
 
 469 U.S. 412
 
 , 434,
 
 105 S.Ct. 844
 
 , 857-58,
 
 83 L.Ed.2d 841
 
 , 858 (1985) ). In this case, the transcript of the hearing shows that counsel for RCDSS gave the trial court several legitimate reasons for denying the motion. Therefore, the trial court's denial of the stay was neither patently arbitrary nor unsupported by reason and this portion of Appellant's argument is without merit.
 

 Furthermore, the trial court was not required to make findings of fact or conclusions of law regarding Appellant's motion to stay. Rule 52(a)(1) of the North Carolina Rules of Civil Procedure states that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the [trial] court shall find the facts specifically and state separately its conclusions of law." However, it also states that "[f]indings of fact and conclusions of law are necessary on decisions of any
 
 *858
 
 motion ... only when requested by a party...." N.C.R. Civ. P. 52(a)(2). This Court has stated that "absent a specific request made pursuant to Rule 52(a)(2), a trial court is not required to either state the reasons for its decision or make findings of fact showing those reasons."
 
 Strickland v. Jacobs
 
 ,
 
 88 N.C.App. 397
 
 , 399,
 
 363 S.E.2d 229
 
 , 230 (1988). Furthermore, when "there is no suggestion in the record that [the] defendant asked for findings of fact or conclusions of law to be included in the trial court's order, the court's failure to do so is not reversible error."
 
 Granville Med. Ctr. v. Tipton
 
 ,
 
 160 N.C.App. 484
 
 , 494,
 
 586 S.E.2d 791
 
 , 798 (2003). Because there was no request made by Appellant for specific findings of fact or conclusions of law as to her motion, this portion of Appellant's argument is without merit.
 

 C.
 
 Placement on the Responsible Individuals List
 

 A "[r]esponsible individual" is statutorily defined as "[a] parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile." N.C. Gen. Stat. § 7B-101(18a) (2015). The Department of Health and Human Services "shall ... maintain a list of responsible individuals" and "may provide information from this list to child caring institutions, child placing agencies, group home facilities, and other providers of foster care, child care, or adoption services that need to determine the fitness of individuals to care for or adopt children." N.C. Gen. Stat. § 7B-311(b). After "[t]he court determines that the individual is a responsible individual as a result of a hearing on the individual's petition for judicial review," their name shall be placed on the RIL. N.C. Gen. Stat. § 7B-311(b)(2).
 

 *381
 
 "If the district court undertakes [a review of a director's determination of abuse or serious neglect], a hearing shall be held pursuant to [ Section 7B-323 ] at which the director shall have the burden of establishing by a preponderance of the evidence abuse or serious neglect and the identification of the individual seeking judicial review as a responsible individual." N.C. Gen. Stat. § 7B-323(e). If, after the hearing, the court concludes that the director has not met his burden of establishing either the abuse or serious neglect, or that the Appellant was the responsible individual, the court shall reverse the director and expunge Appellant's name from the RIL.
 

 Id.
 

 Appellant argues that the trial court erred in making several findings of fact that were not supported by competent evidence, and also that the trial court's conclusions of law were not supported by its findings. Therefore, we must review the trial court's order adjudicating Appellant a responsible individual. In reviewing this order, we must determine whether the findings of fact are supported by competent evidence, and whether the legal conclusions are supported by the findings of fact.
 
 In re F.C.D.
 
 , --- N.C.App. ----, ----,
 
 780 S.E.2d 214
 
 , 217 (2015). "If supported by competent evidence, the trial court's findings are binding on appeal even if the evidence would also support contrary findings."
 
 In re F.C.D.
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 217
 
 . "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991). "Its conclusions of law, however, are reviewed
 
 de novo
 
 ."
 
 In re F.C.D.
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 217
 
 .
 

 Appellant has challenged Findings of Fact Numbers 2, 5 through 10, and 13 in the trial court's order, as well as each of the conclusions of law. Therefore, we shall take each in turn to determine whether the findings of fact are supported by competent evidence, and then whether these findings support the conclusions of law. However, Finding of Fact 2 states that "[t]his [c]ourt has subject matter jurisdiction of this matter[,]" and Conclusion of Law 1 states this same proposition. Because we have already determined this issue above, we shall not address it here.
 

 The trial court made the following challenged findings of fact in support of its conclusion that "[t]he minor child [AJP] is an abused child" and that "[t]he petitioner [Appellant] is the responsible individual and her name should be submitted to be placed on the responsible individual's list":
 

 *859
 

 *382
 
 5. The [c]ourt admitted into evidence High Point Regional Hospital medical records from the minor child [AJP] (RCDSS's exhibit # 2); nine pictures of the minor child's injury (RCDSS's exhibit #1), and Petitioner's exhibit # 1 (five pictures of Petitioner). In addition, the [c]ourt received testimony from the minor child [AJP] (hereinafter referred to as the minor child), [AJP's father], Officer Clifford Chewning Jr., and Petitioner [Appellant].
 

 6. On or about January 26, 2015, the minor child lived ... in Archdale, North Carolina with [Appellant], the minor child's father ..., and the minor child's three siblings....
 

 7.
 
 [3]
 
 On this January 26, 2015, [Appellant] came home from work around 2 a.m. and when she came into the home, she woke the minor child and [AJP's father] up to ask why a dresser was in the living room and she requested the minor child to clean up the kitchen. The minor child cleaned up the kitchen. When the minor child woke up for school later that morning on January 26, 2015, the minor child went to the kitchen to attempt to retrieve a pen from a coffee mug to get some documents for school signed. [Appellant] told the minor child to leave the house because he had on sneakers. The minor child went to his room to take off his sneakers. The minor child went back to the kitchen to attempt to retrieve a pen from a coffee mug again, but [Appellant] cut in front of the minor child and grabbed the coffee mug. She told the minor child to get out again, and the minor child called [Appellant] "selfish." When the minor child turned to walk away from [Appellant], she hit the minor child on the crown of his head with a white coffee mug.
 

 7. After this incident, the minor child bled profusely and [Appellant] told the minor child "don't get blood on my floor and go to the bathroom." Subsequently, the minor child went to the bathroom and he informed his father ... that he was feeling dizzy and lightheaded.
 

 *383
 
 [AJP's father] and the minor child left the home and went to High Point Regional Hospital.
 

 8. The minor child was treated at High Point Regional Hospital for the gash to his head.
 

 8. Officer Clifford Chewning, Jr. with the Archdale Police Department was called to the home of [AJP's father] and [Appellant] on January 26, 2015. When Officer Chewning arrived at the home, he spoke with [Appellant] and she told Officer Chewning that everything was found [sic] and that she had an altercation with [AJP's father] and the minor child. She did not tell Officer Chewning that she had hit the minor child in the head with a coffee mug. After Officer Chewning left the home, he spoke with the minor child at High Point Regional Hospital and the minor child told him that [Appellant] and he had argued around 2 am on January 26, 2015 regarding his father moving a chest of drawers. In addition, around 7 a.m., the minor child was going to get a pen from a mug, and [Appellant] grabbed the mug and hit him on the back of his head with the mug.
 

 9. Officer Chewning did observe the gash of the back of the minor child's head on January 26, 2015 at High Point Regional Hospital.
 

 10. Officer Chewning also spoke with [AJP's father]. [AJP's father] told Officer [Chewning] he did not witness the incident, but he heard the mug hit the minor child's head and he observed the minor child bleed from the gash on his head. He also observed [Appellant] tell the minor child not to bleed on the floor. [AJP's father] took the minor child to the hospital.
 

 ....
 

 *860
 
 13. The [Appellant's] version of the series of events that led to the January 26, 2015 event with the minor child are not consistent with the facts that were presented in this case.
 

 With regards to the findings of fact, Appellant first specifically challenges the references to AJP as a "minor child" in Findings of Fact 5, 6, and 8. We have addressed AJP's age, and at what point in these proceedings that his age was relevant, in the above section addressing
 
 *384
 
 jurisdiction. Therefore, we will only note that the introduction of AJP's medical records through Ashley Coddle gave competent and undisputed evidence from which the trial court could determine and find as fact that AJP was a "minor child" at the relevant time with regards to this petition for review. Therefore, this finding will not be disturbed on appeal.
 

 Appellant has also argued that the trial court's findings of fact 7 through 10 (which is, in fact, six findings of fact as there were two findings labeled 7, and two labeled 8) were made without sufficient specificity and were simply recitations of witness' testimony. "[A] proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment."
 
 Quick v. Quick
 
 ,
 
 305 N.C. 446
 
 , 451,
 
 290 S.E.2d 653
 
 , 657 (1982). However, in light of the record, the challenged findings of fact are sufficiently specific to enable our review. They give the relevant evidentiary facts from which the ultimate facts and conclusions could be found,
 
 i.e.
 
 , that Appellant's version of events was inconsistent with the other facts presented, that AJP was abused, and that Appellant was the responsible individual.
 

 Finally, Appellant challenges Finding of Fact 13, and argues that the trial court failed to make a finding of fact with regard to her self-defense claim raised during the hearing. However, "when a trial judge sits as both judge and juror, as he or she does in a non-jury proceeding, it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom."
 
 In re Whisnant
 
 ,
 
 71 N.C.App. 439
 
 , 441,
 
 322 S.E.2d 434
 
 , 435 (1984) (internal quotation marks omitted). It is not within this Court's purview to reweigh the evidence, as we are only to determine whether the findings of fact are supported by competent evidence and, if so, these are binding on appeal.
 
 See
 

 In re F.C.D.
 
 , --- N.C.App. at ----,
 
 780 S.E.2d at 217
 
 . If the trial court did not make a finding of fact with regards to Appellant's self-defense claim, it simply means that the trial court was not convinced that it was valid. "[I]t is well established that when the facts found by the trial court are 'sufficient to determine the entire controversy,' the court's 'failure to find other facts is not error.' "
 
 Smallwood v. Smallwood
 
 , --- N.C.App. ----, ----,
 
 742 S.E.2d 814
 
 , 822 (2013) (quoting
 
 Graybar Elec. Co. v. Shook
 
 ,
 
 283 N.C. 213
 
 , 217,
 
 195 S.E.2d 514
 
 , 516 (1973) ). Therefore, this portion of Appellant's argument is overruled.
 

 Each of the findings of fact set out in the trial court's order was supported by competent evidence. We now review the trial court's conclusions of law
 
 de novo
 
 . The first conclusion of law was that the court had
 
 *385
 
 subject matter jurisdiction over this matter. Because we have addressed this above, we shall not do so again.
 

 The second conclusion of law was that "[t]he minor child [AJP] is an abused child," or juvenile. The Juvenile Code defines an abused juvenile as "[a]ny juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker ... [i]nflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means[.]" N.C. Gen. Stat. § 7B-101(1)(a). As discussed above, the trial court made the finding of fact that AJP was a minor child. It is not challenged that Appellant was a "parent, guardian, custodian, or caretaker."
 

 Id.
 

 Appellant argues that there was no competent evidence that the serious physical injury was inflicted "by other than accidental means."
 

 Id.
 

 However, the testimony of AJP tends to establish that when Appellant struck him in the head it was intentional, by other than accidental means. As stated above, if the trial court does not make a finding, it simply means that
 
 *861
 
 the trial court was not convinced that a fact existed. The trial court did not find that the serious injury was inflicted by accidental means; and therefore, this court can infer that it was inflicted by "other than accidental means."
 

 Id.
 

 We affirm this conclusion of law because it was without error.
 

 Finally, the trial court concluded that "[Appellant] is the responsible individual and her name should be submitted to be placed on the responsible individual's list." A responsible individual is "[a] parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile." N.C. Gen. Stat. § 7B-101(18a). Appellant was a "parent, guardian, custodian, or caretaker," and, as shown above, "abuse[d]" AJP, therefore, she is a responsible individual.
 

 Id.
 

 Because "[t]he name of an individual who has been identified as a responsible individual
 
 shall
 
 be placed on the responsible individual list ... after ... [t]he court determines that the individual is a responsible individual as a result of a hearing on the individual's petition for judicial review" (emphasis added), N.C. Gen. Stat. § 7B-311(b)(2) required the trial court to conclude as a matter of law that Appellant's name be placed on the responsible individual's list. Therefore, this conclusion of law was also without error.
 

 Conclusion
 

 For the reasons set out above, each of Appellant's arguments are overruled. Therefore, the order of the trial court finding that Appellant was a responsible individual and placing her name on the RIL is affirmed.
 

 AFFIRMED.
 

 Judges DAVIS and INMAN concur.
 

 [1]
 

 The initials "AJP" have been used throughout to protect the identity of the juvenile pursuant to Rule 3.1(b) of the North Carolina Rules of Appellate Procedure.
 

 [2]
 

 To protect the identity of the juvenile pursuant to N.C.R. App. P. 3.1(b), AJP's birthdate is withheld.
 

 [3]
 

 Within the trial court's order there were two findings of fact labeled 7, and two labeled 8. This seems to be a typographical error.