COLLINS, Judge.
 

 *168
 
 Plaintiff appeals from an order dismissing his claims with prejudice pursuant to North Carolina Rule of Civil Procedure 41(b). Plaintiff contends that the trial court erred by making unsupported findings of fact and erroneous conclusions of law in determining that Plaintiff had not shown a right to relief on his various causes of action. We affirm.
 

 I. Background
 

 Plaintiff worked in the foodservice industry from the 1970s until 2015, when the transaction at issue in this case took place. From 1994 to 2015, Plaintiff worked at and managed a number of restaurants affiliated with Smithfield's Chicken 'N Bar-B-Q ("Smithfield's"), a restaurant chain owned by Mid-Atlantic Restaurant Corporation ("MARC") and managed by Smithfield Management Corporation ("SMC") and, later, Cary Keisler, Inc.
 

 *371
 
 Plaintiff and Defendant have had a personal and professional relationship that began when they met while working together in the mid-1970s. In the late 1990s, Plaintiff approached Defendant about
 
 *169
 
 partnering to purchase and thereafter operate a Smithfield's franchise in Ogden. Defendant agreed, and the parties created two entities to own (Flamingo Properties, LLC) and operate (Whiteshire Foods, Inc.) the restaurant. Flamingo Properties purchased the real property, and Whiteshire Foods acquired the franchise and rented the property from Flamingo Properties.
 

 Each of the parties owned a 50% interest in each entity. As with the other restaurants subsequently purchased as described below, Plaintiff was responsible for managing the Ogden restaurant and liaising with Smithfield's corporate management at SMC/Cary Keisler, and Defendant provided the collateral necessary to secure financing to purchase the property (which was also secured by personal guarantees from both Plaintiff and Defendant) but otherwise had a largely passive role in the joint ventures.
 

 Several years later, through Flamingo Properties, the parties purchased another property in Wilmington, and Whiteshire Foods began to operate a Smithfield's franchise thereupon pursuant to a franchise agreement with Smithfield's. In 2007, the parties created Flamingo South, LLC (together with Flamingo Properties, the "LLCs"), for the purpose of acquiring and operating another Smithfield's restaurant in Leland. As with Flamingo Properties, each of the parties owned a 50% interest in Flamingo South. Flamingo South purchased the Leland property, and the parties began operating a Smithfield's franchise thereupon in 2008 through a separate operating entity they created and pursuant to a franchise agreement with Smithfield's. Flamingo South purchased another property in Shallotte in 2013, and the parties began operating another Smithfield's franchise thereupon in 2014 through another operating entity they created and pursuant to a franchise agreement with Smithfield's.
 

 In 2010, Smithfield's sent a notice to the parties that their franchises were not being operated in compliance with the applicable franchise agreements as required. Plaintiff responded to Smithfield's that he would address the deficiencies.
 

 In early February 2015, the parties met with David Harris, a Cary Keisler executive, who told them that their franchises were not being operated in compliance with the applicable franchise agreements. Rather than invoke Smithfield's rights to terminate the franchises, Harris proposed (1) purchasing the Leland and Shallotte franchises from the operating entities, and renting those properties from the LLCs, and (2) allowing the parties (through the relevant operating entities) to continue
 
 *170
 
 to operate the Ogden and Wilmington franchises, contingent upon Plaintiff's increased attention to the operational deficiencies in those locations. The parties agreed to Harris' proposed deal.
 

 In late May 2015, Harris visited the Ogden and Wilmington franchises, and found them in unacceptably-poor condition. On 23 May 2015, Harris met with Plaintiff at the Ogden franchise, and physically barred Plaintiff from the premises, telling Plaintiff that (1) the Ogden franchise was terminated effective immediately, (2) Plaintiff was to have no further contact with Smithfield's or its employees, and further communication with Smithfield's would have to be through Defendant, and (3) Plaintiff would get no "golden parachute" from the company. Plaintiff contacted Defendant the same day and told him about the incident. On 26 May 2015, Smithfield's formally notified the parties by letter that the parties' remaining franchises were being terminated.
 

 Defendant decided to end his business relationship with Plaintiff. Defendant consulted Jeffrey Keeter, the attorney to the parties' joint ventures, and Keeter advised Defendant to try to buy Plaintiff out of his interests in the LLCs. Defendant and Plaintiff met multiple times and negotiated the terms of Plaintiff's buyout, by which Plaintiff agreed to assign his interests in the LLCs back to the LLCs in exchange for a promissory note signed by the LLCs entitling Plaintiff to (1) $375,000 paid in monthly payments over five years, (2) car and car insurance payments for two years, (3) health insurance payments for
 
 *372
 
 two years, and (4) cellular telephone payments for two years. Defendant had Keeter draft a Membership Redemption Agreement providing for the assignment of the LLC interests in exchange for the consideration described above, including a promissory note entitling Plaintiff to $375,000 in payments from the LLCs over a period of 60 months (collectively, the "Redemption Agreement"). Keeter reviewed the Redemption Agreement with Plaintiff, explained the legal effect of the Redemption Agreement to Plaintiff, and asked Plaintiff whether he had any questions about the Redemption Agreement; Plaintiff told Keeter that he had none. The parties executed the Redemption Agreement on 29 May 2015, which contained a merger clause stating that it comprised the entire agreement between the parties.
 

 At no time prior to executing the Redemption Agreement did Plaintiff contact Harris or anyone else at Smithfield's to inquire as to what Smithfield's might do if Plaintiff retained an interest in the LLCs. Plaintiff has received all benefits contemplated by the Redemption Agreement.
 

 Plaintiff filed a complaint against Defendant and the LLCs on 26 January 2016 bringing causes of action for breach of contract, fraud
 
 *171
 
 and misrepresentation, constructive fraud, breach of fiduciary duty, unjust enrichment, unfair and deceptive trade acts, and breach of the implied covenant of good faith and fair dealing in connection with the Redemption Agreement transaction. Plaintiff also purported to bring causes of action for specific performance and constructive trust, and filed a notice of
 
 lis pendens
 
 against the land held by the LLCs. Distilled to its essence, the complaint alleged that Plaintiff was tricked by Defendant into believing that Smithfield's had told Defendant that Plaintiff was required to divest himself of his interests in the LLCs, and that in inducing Plaintiff to execute the Redemption Agreement, Defendant had represented to him that the Redemption Agreement was a meaningless transaction necessary to appease Smithfield's that Plaintiff was no longer involved with what had been the parties' joint venture.
 

 On 2 May 2016, Defendant and the LLCs moved to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2016). On 6 July 2016, Defendant withdrew the Rule 12 motion in his individual capacity, and on 12 July 2016 the trial court granted the LLCs' Rule 12 motion, leaving only Plaintiff's causes of action as alleged against Defendant personally. The 12 July 2016 order also struck the notices of
 
 lis pendens
 
 filed by Plaintiff.
 

 On 29 July 2016, Defendant answered, asserted a number of affirmative defenses, and filed counterclaims against Plaintiff for breach of contract and breach of fiduciary duty. Plaintiff replied to Defendant's counterclaims on 2 and 9 September 2016.
 

 On 27 February 2017, following discovery, Defendant moved the trial court under N.C. Gen. Stat. § 1A-1, Rule 56 (2017), for summary judgment. Plaintiff then moved the trial court pursuant to N.C. Gen. Stat. § 1A-1, Rule 15 (2017), for leave to amend his complaint and reply to Defendant's counterclaims on 22 May 2017.
 

 On 15 August 2017, the trial court ruled on Defendant's Rule 56 motion, granting Defendant summary judgment as to Plaintiff's cause of action for unfair and deceptive trade acts, but denying Defendant's motion as to Plaintiff's other causes of action. On 18 December 2017, based on agreement of the parties, the trial court granted Plaintiff's motion to amend the complaint, and set the matter for bench trial. Plaintiff's amended complaint added causes of action for fraud in the inducement, mutual mistake, unilateral mistake, and unconscionability.
 

 On 22 December 2017, Defendant moved to dismiss Plaintiff's amended complaint under N.C. Gen. Stat. § 1A-1, Rules 9(b) and 12(b)(6) (2017), and again moved the trial court for summary judgment under Rule 56. The trial court denied Defendant's motions on 7 February 2018.
 

 *172
 
 A trial on the issues was held on 12 February 2018, and on 14 February 2018 the trial court entered an order dismissing all of Plaintiff's causes of action with prejudice pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b) (2018). The trial court concluded that Plaintiff had not shown a right to relief under any of his causes of action, and that Plaintiff had ratified the Redemption Agreement by
 
 *373
 
 accepting the benefits thereof after learning that Smithfield's had not required Plaintiff to divest himself of his interests in the LLCs. Defendant voluntarily dismissed his counterclaims pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(a) and (c) (2018), the following day. Plaintiff timely appealed.
 

 II. Discussion
 

 On appeal, Plaintiff contends that the trial court erred by (1) making findings of fact unsupported by competent evidence in the record and (2) making erroneous conclusions of law in dismissing Plaintiff's causes of action sounding in fraud, mistake, breach of fiduciary duty, unjust enrichment, constructive trust, breach of the implied covenant of good faith and fair dealing, and unconscionability.
 

 a. Standard of Review
 

 Rule 41(b) -pursuant to which the trial court involuntarily dismissed Plaintiff's causes of action-reads in relevant part as follows:
 

 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).
 

 N.C. Gen. Stat. § 1A-1, Rule 41(b).
 

 Our Supreme Court has elaborated:
 

 [T]he trial judge has the power under Rule 41(b) to adjudicate the case on the merits at the conclusion of the plaintiff's evidence; and is not obliged to consider plaintiff's evidence in a light most favorable to plaintiff as he would have to do in a jury case. ... When a motion to dismiss
 
 *173
 
 pursuant to 41(b) is made, the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him. He passes upon the credibility of the witnesses and the weight to be given to their testimony.
 

 Dealers Specialties, Inc. v. Neighborhood Hous. Servs., Inc.
 
 ,
 
 305 N.C. 633
 
 , 639-40,
 
 291 S.E.2d 137
 
 , 141 (1982) (internal quotation marks and citations omitted).
 

 We review a trial court's dismissal under Rule 41(b) to determine (1) whether the trial court's findings of fact are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and the judgment.
 
 Cohen v. McLawhorn
 
 ,
 
 208 N.C. App. 492
 
 , 498,
 
 704 S.E.2d 519
 
 , 524 (2010). The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if there is evidence to support findings to the contrary.
 
 McNeely v. S. Ry. Co.
 
 ,
 
 19 N.C. App. 502
 
 , 505,
 
 199 S.E.2d 164
 
 , 167 (1973). Where findings of fact are not disputed on appeal, we deem them supported by competent evidence, and they are binding on appeal.
 
 State v. McLamb
 
 ,
 
 186 N.C. App. 124
 
 , 125,
 
 649 S.E.2d 902
 
 , 903 (2007). We review the trial court's conclusions of law
 
 de novo
 
 .
 
 Shear v. Stevens Bldg. Co.
 
 ,
 
 107 N.C. App. 154
 
 , 160,
 
 418 S.E.2d 841
 
 , 845 (1992).
 

 b. Findings of Fact
 

 Plaintiff first argues that the trial court made a number of findings of fact that are unsupported by competent evidence in the record. In his brief, Plaintiff "specifically assigns error" in a single sentence to a list of 19 of the trial court's findings of fact, but provides no rationale as to why Plaintiff believes any of those findings, except for findings of fact 24 and 31, were erroneous. Although Plaintiff elsewhere in his brief again mentions findings of fact 25, 33, 39, and 43, Plaintiff does not explain why these findings are erroneous, and even cites to one of them to support his own argument,
 
 see
 
 Appellant's Brief, at 16 ("The Court's finding of fact 25 backs up this contention."). Accordingly, Plaintiff's arguments regarding all but findings of fact 24 and 31 are deemed abandoned. N.C. R. App. P. 28(b)(6) (2018) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.");
 

 *374
 

 Cox v. Cox
 
 ,
 
 238 N.C. App. 22
 
 , 29,
 
 768 S.E.2d 308
 
 , 313 (2014) ("As to the remaining findings of fact listed in this subsection of defendant's argument, defendant does not specifically support her challenge with any contention, and we deem those arguments abandoned.").
 

 *174
 
 We conclude that finding of fact 24-to wit, that the Leland and Shallotte franchises were underperforming and that Plaintiff was not properly overseeing the franchises generally-is not material to any of the trial court's legal conclusions appealed by Plaintiff, and as such, cannot be the basis for reversal.
 
 In re Custody of Stancil
 
 ,
 
 10 N.C. App. 545
 
 , 549,
 
 179 S.E.2d 844
 
 , 847 (1971) ("Immaterial findings of fact are to be disregarded."). Plaintiff's argument regarding finding of fact 24 is accordingly unavailing.
 

 The contested portion of finding of fact 31 states that "Defendant stood to lose substantially more in the event of a loan default and foreclosure, having placed his separately owned property and cash as collateral." This finding is supported by Plaintiff's own testimony that it was Defendant who provided the collateral necessary to obtain financing for the parties' joint ventures, and that Defendant would be most impacted in the event of foreclosure.
 

 Plaintiff argues that he "stood to lose his entire income" in such a scenario, which he considers "substantially more," ostensibly on a relative basis. But Plaintiff's reading of finding of fact 31 misconstrues the finding. The trial court found that Defendant stood to lose more than Plaintiff, without any qualifier that it calculated the values of the parties' prospective individual losses in relation to the parties' individual wealth or other individual income. Thus, assuming
 
 arguendo
 
 that finding of fact 31 is not immaterial to the trial court's conclusions of law, we conclude that it is supported by competent evidence in the record.
 

 Accordingly, the trial court's relevant findings of fact are supported by competent record evidence, and are thus binding for purposes of our analysis.
 
 [1]
 

 *175
 

 c. Fraud
 

 Although Plaintiff has appealed the dismissal of his causes of action for both fraud and misrepresentation
 
 [2]
 
 and fraud in the inducement, both causes of action concern Plaintiff's allegation that Defendant told Plaintiff that Smithfield's required Plaintiff to divest his LLC interests, which Plaintiff alleges fraudulently induced Plaintiff to execute the Redemption Agreement. Under North Carolina law, a plaintiff bringing causes of action under either fraud and misrepresentation or fraud in the inducement theories are required to convince the fact finder to find that the defendant falsely represented or concealed a material fact.
 
 [3]
 
 Since (1) the alleged facts underlying both of the fraud-based causes of action here before us are the same, (2) both causes of action require the fact finder to find that the defendant falsely represented or concealed a material fact, and (3) as discussed below, we discern no error from the trial court's failure to find that Defendant falsely represented or concealed anything from Plaintiff and thus discern no error with respect to the dismissal of either of the fraud-based causes of action, we analyze Plaintiff's fraud-based causes of
 
 *375
 
 action together as a cause of action alleging fraud.
 

 "To establish a claim for fraud, plaintiff must show that: (1) defendant[ ] made a representation of a material past or existing fact; (2) the representation was false; (3) defendant[ ] knew the representation was false or made it recklessly without regard to its truth or falsity; (4) the representation was made with the intention that it would be relied upon; (5) plaintiff did rely on it and that her reliance was reasonable; and (6) plaintiff suffered damages because of her reliance."
 
 Broughton
 
 , 161 N.C. App. at 31, 588 S.E.2d at 29 (citation omitted).
 

 In support of his argument that the trial court erred in dismissing his fraud-based causes of action, Plaintiff points to three alleged misrepresentations by which he argues Defendant fraudulently caused him to enter into the Redemption Agreement: (1) Defendant's telling Plaintiff that Smithfield's required Plaintiff to divest his interests in the LLCs, (2) that the parties "just had to get some agreement on paper" in order
 
 *176
 
 to appease Smithfield's, and (3) that "everything would be okay" if they did so.
 

 Regarding the second and third alleged misrepresentations, such statements are not actionable as fraud because neither are a representation of a material past or existing fact upon which Plaintiff could have reasonably relied.
 
 See
 

 Broughton
 
 , 161 N.C. App. at 31, 588 S.E.2d at 29 ("To establish a claim for fraud, plaintiff must show that: (1) defendants made a representation of a material past or existing fact; ... [and] (5) plaintiff did rely on [the representation] and that her reliance was reasonable" (citation omitted));
 
 see also
 

 State v. Williams
 
 ,
 
 98 N.C. App. 274
 
 , 280,
 
 390 S.E.2d 746
 
 , 749 (1990) (in the securities fraud context, a fact is material when "there is a substantial likelihood that a reasonable [purchaser] would consider [the fact] important in deciding" whether or not to make the purchase (quoting
 
 TSC Industries, Inc. v. Northway, Inc.
 
 ,
 
 426 U.S. 438
 
 , 449,
 
 96 S.Ct. 2126
 
 ,
 
 48 L.Ed.2d 757
 
 (1976) )).
 

 Regarding the first alleged misrepresentation, Plaintiff asserts on appeal that "it is uncontested that [Defendant] represent[ed] to [Plaintiff]: (1) that [Plaintiff] would have to divest his interest in both the businesses and land-holding entities in order for the businesses to continue[.]" But Plaintiff's assertion is not accurate. The record shows that Defendant, in his answer, denied Plaintiff's allegation that Defendant made such a representation to Plaintiff, and Defendant argues on appeal that the only evidence that such a statement was made is Plaintiff's own testimony. Plaintiff does not rebut Defendant's argument in a reply brief,
 
 see
 
 N.C. R. App. P. 28(h), by citing to record evidence that corroborates Plaintiff's testimony, and our review of the record reveals none.
 

 It was the trial court's prerogative to weigh all of the evidence and to decide whether it was convinced that Defendant made such a statement to Plaintiff.
 
 [4]
 

 See
 

 In re Patron
 
 ,
 
 250 N.C. App. 375
 
 , 384,
 
 792 S.E.2d 853
 
 , 860 (2016) ("[W]hen a trial judge sits as both judge and juror, as he or she does in a non-jury proceeding, it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable
 
 *177
 
 inferences to be drawn therefrom[.]" (citation omitted)). Moreover, it was within the trial court's discretion to determine Plaintiff's testimony was not credible, and to decline to find facts based upon Plaintiff's testimony.
 
 See
 
 id.
 

 (holding no error for failure to find a fact, reasoning that "[i]f the trial court did not make a finding of fact with regards to Appellant's self-defense claim, it simply means that the trial court was not convinced that it was valid.");
 
 see also
 

 Agee v. Thomasville Furniture Prods.
 
 ,
 
 119 N.C. App. 77
 
 , 83,
 
 457 S.E.2d 886
 
 , 890 (1995) (holding trial court's finding of the
 
 *376
 
 absence of a fact testified to by the plaintiff was supported by competent evidence where the trial court found the plaintiff not credible).
 

 As such, we conclude that the trial court did not err in determining that Plaintiff did not show a right to relief on his fraud-based causes of action.
 

 d. Mistake
 

 Plaintiff argues that the trial court erred by dismissing Plaintiff's causes of action seeking to set aside the Redemption Agreement under the doctrines of unilateral mistake and mutual mistake.
 

 i. Unilateral mistake
 

 Under the doctrine of unilateral mistake, a contract may be avoided when one party makes a mistake induced by "fraud, imposition, undue influence, or like oppressive circumstances" attributable to his counterparty.
 
 Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.
 
 ,
 
 288 N.C. 122
 
 , 136,
 
 217 S.E.2d 551
 
 , 560 (1975).
 

 As explained above, we discern no error in the trial court's conclusion that Plaintiff has not shown that Defendant defrauded him. Plaintiff makes no argument that he was subjected to imposition or undue influence, and his arguments regarding other oppressive circumstances-e.g., that Plaintiff was placed under duress by virtue of Defendant's alleged misrepresentation, and that Defendant breached a fiduciary duty owed to him-are unavailing as a matter of law.
 
 See
 

 Link v. Link
 
 ,
 
 278 N.C. 181
 
 , 194,
 
 179 S.E.2d 697
 
 , 705 (1971) (duress requires wrongful act of another); Section II(e)(i)
 
 infra
 
 (holding no breach of fiduciary duty). Accordingly, we conclude that the trial court did not err in determining that Plaintiff did not show a right to relief under the doctrine of unilateral mistake.
 

 ii. Mutual mistake
 

 Under the doctrine of mutual mistake, "a contract may be avoided on the ground of mutual mistake of fact when there is a mutual mistake
 
 *178
 
 of the parties as to an existing or past fact that is material and enters into and forms the basis of the contract or is 'of the essence of the agreement.' "
 
 Creech v. Melnik
 
 ,
 
 347 N.C. 520
 
 , 527,
 
 495 S.E.2d 907
 
 , 912 (1998) (citation omitted). Plaintiff argues that Defendant "was mistakenly operating under the fact that Smithfield had directed him that [Plaintiff] could no longer be involved in the business in any capacity, even as landlord." Plaintiff thus alleges a mistake as to an existing or past fact-i.e., that Smithfield's had directed Defendant that Plaintiff could not hold interests in the LLCs going forward-which became a mutual mistake of fact that formed the "entire basis of signing the [Redemption] Agreement" when Defendant communicated that fact to Plaintiff in negotiating the Redemption Agreement.
 

 But the trial court did not find that Defendant believed that Smithfield's had given him any direction about Plaintiff's involvement with the LLCs, let alone that Defendant told Plaintiff that he had been so directed. Before the trial court, Defendant gave the following testimony:
 

 Q. You never told [Plaintiff] that Mr. Harris told you that [Plaintiff] had to get out of the real estate LLCs, did you?
 

 A. No, sir.
 

 As finder of fact, the trial court was free to believe Defendant's testimony. And as discussed above in section II(c), the trial court was also free to disbelieve the only evidence to the contrary: Plaintiff's own testimony. Since a fact finder's determinations regarding weight and credibility of evidence are conclusive on appeal,
 
 Chloride, Inc. v. Honeycutt
 
 ,
 
 71 N.C. App. 805
 
 , 806,
 
 323 S.E.2d 368
 
 , 369 (1984) ("It is not for us, as an appellate court, to determine the weight and credibility to be given evidence in the record."), by believing Defendant and disbelieving Plaintiff, the trial court conclusively rejected Plaintiff's argument that there was a mutual mistake as to a past or existing fact here.
 

 We accordingly conclude that the trial court did not err in determining that Plaintiff had not shown a right to relief under the doctrine of mutual mistake.
 

 *377
 

 e. Plaintiff's Remaining Causes of Action
 

 Plaintiff also argues that the trial court erred by dismissing Plaintiff's causes of action alleging breach of fiduciary duty, unjust enrichment, breach of the implied covenant of good faith and fair dealing, unconscionability, and constructive trust.
 

 *179
 
 i. Breach of fiduciary duty
 

 The elements of a breach of fiduciary duty cause of action are: (1) a fiduciary relationship existed between the parties; (2) the defendant breached the fiduciary duty owed to the plaintiff; and (3) the breach proximately caused the plaintiff injury.
 
 See
 

 Green v. Freeman
 
 ,
 
 367 N.C. 136
 
 , 141,
 
 749 S.E.2d 262
 
 , 268 (2013). Members of a North Carolina limited liability company, like the parties to this lawsuit, do not owe fiduciary duties to each other that can be breached.
 
 Kaplan v. O.K. Techs., L.L.C.
 
 ,
 
 196 N.C. App. 469
 
 , 473,
 
 675 S.E.2d 133
 
 , 137 (2009) ("Members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company."). Accordingly, we conclude that the trial court did not err in determining that Plaintiff did not show a right to relief on his cause of action alleging breach of fiduciary duty.
 

 ii. Unjust enrichment
 

 "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor."
 
 Krawiec v. Manly
 
 ,
 
 370 N.C. 602
 
 , 615,
 
 811 S.E.2d 542
 
 , 551 (2018) (citation omitted). However, where "a contract exists between the parties, the law will not imply a contract."
 
 Se. Shelter Corp. v. Btu, Inc.
 
 ,
 
 154 N.C. App. 321
 
 , 331,
 
 572 S.E.2d 200
 
 , 207 (2002). Because Plaintiff and Defendant are contractual counterparties, the trial court did not err in determining that Plaintiff did not show a right to relief on his unjust enrichment cause of action.
 

 iii. Breach of implied covenant of good faith and fair dealing
 

 "There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract."
 
 Bicycle Transit Auth. v. Bell
 
 ,
 
 314 N.C. 219
 
 , 228,
 
 333 S.E.2d 299
 
 , 305 (1985) (citation omitted). But Plaintiff makes no allegation that he has been deprived of the benefits of the Redemption Agreement. Indeed, the record shows that Plaintiff admitted that he has received the benefits bargained for, including cashing every one of the checks remitted to him by the LLCs in accordance with the Redemption Agreement's provisions.
 

 Since the record does not reflect that Plaintiff was deprived of the benefits of the Redemption Agreement, we conclude that the trial court did not err in determining that Plaintiff did not show a right to relief on his cause of action alleging breach of the implied covenant of good faith and fair dealing.
 

 *180
 
 iv. Unconscionability
 

 A court will find a contract to be unconscionable only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. An inquiry into unconscionability requires that a court consider all the facts and circumstances of a particular case, and if the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable. ... A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability. ... [P]rocedural unconscionability involves bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power. Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms.
 

 Tillman v. Commer. Credit Loans, Inc.
 
 ,
 
 362 N.C. 93
 
 , 101-03,
 
 655 S.E.2d 362
 
 , 369-70 (2008) (internal quotation marks, brackets, and citations omitted),
 
 abrogated as discussed in
 

 *378
 

 Torrence v. Nationwide Budget Fin.
 
 ,
 
 232 N.C. App. 306
 
 , 322-23,
 
 753 S.E.2d 802
 
 , 811-12 (2014).
 

 Plaintiff's sole argument in support of his unconscionability cause of action is that signing the Redemption Agreement caused him to earn less than he allegedly would have earned had he not done so. "The question of unconscionability is determined as of the date the contract was executed[,]"
 
 Weaver v. St. Joseph of the Pines, Inc.
 
 ,
 
 187 N.C. App. 198
 
 , 212,
 
 652 S.E.2d 701
 
 , 712 (2007), meaning that a court will not adjudge a contract based upon how uncertain events unfolded following the contract's execution. As such, even presuming that Plaintiff established at trial that the LLCs brought in income following the Redemption Agreement's execution sufficient to render the bargain Plaintiff made relatively uneconomical, a bad bargain does not render a contract unconscionable absent evidence that the contract was tainted by, e.g., unequal bargaining positions, oppression, and the like.
 
 See
 

 Westmoreland v. High Point Healthcare Inc.
 
 ,
 
 218 N.C. App. 76
 
 , 90,
 
 721 S.E.2d 712
 
 , 722 (2012) ("People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." (citation omitted)).
 

 *181
 
 The record here shows that Plaintiff negotiated the Redemption Agreement with Defendant based upon the same information and upon equal terms, that Plaintiff admitted that the terms of the contract were all true and that he understood what he was signing, and that Plaintiff walked away with hundreds of thousands of dollars and various benefits guaranteed in exchange for his share of the LLCs' uncertain future profits.
 

 We accordingly conclude that the trial court did not err in determining that Plaintiff did not show a right to relief on his unconscionability cause of action.
 

 v. Constructive trust
 

 As the trial court correctly noted, a constructive trust is a remedy, not a cause of action, and is "merely a procedural device by which a court of equity may rectify certain wrongs."
 
 Weatherford v. Keenan
 
 ,
 
 128 N.C. App. 178
 
 , 179,
 
 493 S.E.2d 812
 
 , 813 (1997) (citation omitted);
 
 see
 

 Sara Lee Corp. v. Carter
 
 ,
 
 351 N.C. 27
 
 , 35,
 
 519 S.E.2d 308
 
 , 313 (1999) ("Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." (citation omitted)). Since, as discussed above, we conclude that the trial court did not err by determining that Plaintiff has not shown any fraud or breach of fiduciary duty by Defendant, and since we discern no other circumstances justifying the imposition of a constructive trust upon Defendant, we conclude that the trial court did not err in dismissing Plaintiff's cause of action for constructive trust.
 

 f. Ratification
 

 Because we conclude that the trial court did not err in determining that Plaintiff has not shown any right to relief, we need not address Defendant's affirmative defense of ratification.
 

 III. Conclusion
 

 Because we conclude that the trial court did not err in its findings of fact or in determining that Plaintiff did not show a right to relief under any of his various causes of action, we affirm.
 

 AFFIRMED.
 

 Judges BRYANT and STROUD concur.
 

 [1]
 

 In the section of his brief regarding the trial court's findings of fact, Plaintiff also argues that "nowhere in the findings of fact is the most crucial portion of the case," i.e., "whether or not [Defendant] made specific representations to [Plaintiff which] induced [Plaintiff] to sign the Redemption Agreement." A trial court's failure to find a fact is not error unless the fact is necessary to support the trial court's order.
 
 Graybar Elec. Co. v. Shook
 
 ,
 
 283 N.C. 213
 
 , 217,
 
 195 S.E.2d 514
 
 , 516 (1973) ("When findings of fact sufficient to determine the entire controversy are made by the court, failure to find other facts is not error."). As such, we address Plaintiff's argument in section II(c), in which we analyze the trial court's conclusions of law that Plaintiff did not show a right to relief on his causes of action sounding in fraud.
 

 [2]
 

 North Carolina courts analyze a cause of action alleging fraud and misrepresentation as a cause of action alleging fraud.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 Folmar v. Kesiah
 
 ,
 
 235 N.C. App. 20
 
 , 25,
 
 760 S.E.2d 365
 
 , 367 (2014) (analyzing the plaintiff's "fraud and misrepresentation claim" as alleging fraud).
 

 [3]
 

 Compare
 

 Broughton v. McClatchy Newspapers, Inc.
 
 ,
 
 161 N.C. App. 20
 
 , 31,
 
 588 S.E.2d 20
 
 , 29 (2003) (elements of fraud),
 
 with
 

 Harton v. Harton
 
 ,
 
 81 N.C. App. 295
 
 , 298-99,
 
 344 S.E.2d 117
 
 , 119-20 (1986) (elements of fraud in the inducement).
 

 [4]
 

 Plaintiff argues in his brief that Defendant told Keeter that Plaintiff "had to be out of both the restaurants and land ownership" in an attempt to support his fraud arguments. But because Plaintiff does not allege that Plaintiff relied upon the alleged statement to Keeter-let alone that Plaintiff did so reasonably-this alleged statement cannot be actionable as fraud.
 
 Broughton
 
 ,
 
 161 N.C. App. at 31
 
 ,
 
 588 S.E.2d at 29
 
 ("To establish a claim for fraud, plaintiff must show that: ... (4) the representation was made with the intention that it would be relied upon; [and] (5) plaintiff did rely on it and that her reliance was reasonable." (citation omitted)).